Argued and submitted June 4, order of dismissal of Court of Appeals affirmed and
petition for judicial review dismissed September 8, 1999

ANTONIO QUINTERO, SR.,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A97382; SC S45064)

986 P2d 575

Andy Simrin, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were David E. Groom, Public Defender, and Anne Morrison, Deputy Public Defender.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent on review. Janet A. Metcalf, and Kelly Knivila, Assistant Attorneys General, filed the brief. With them on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs, Justices.**

GILLETTE, J.

** Kulongoski, J., did not participate in the consideration or decision of the case.

## GILLETTE, J.

Petitioner seeks review of a Court of Appeals' order dismissing his petition for judicial review of an order of the Board of Parole and Post-Prison Supervision (Board). The order, which was issued after petitioner's parole had been revoked for violating a condition of parole, denied petitioner rerelease and set a new release date some 23 years in the future. When petitioner attempted to challenge the order, the Court of Appeals dismissed his petition for lack of jurisdiction, concluding that, because the order was a "decision relating to a [parole] release date," it was immune from judicial review under ORS 144.335(3), set out *post*. Petitioner sought review by this court, arguing that the Court of Appeals interpreted ORS 144.335(3) too broadly and that the statute does not apply to the order that he challenges. We accepted review to consider the scope of the bar to review contained in ORS 144.335(3). We conclude that the Court of Appeals correctly construed that statute as barring review of *any* decision relating to a parole release date, including the order at issue here. Accordingly, we affirm the Court of Appeals' dismissal of petitioner's petition for judicial review.

Petitioner was released on parole in April 1996, after serving seven years in prison for crimes that he committed in 1988. As a condition of parole, petitioner was required to refrain from the use of intoxicants. In October 1996, petitioner's parole officer reported to the Board that petitioner had consumed alcohol on at least two occasions since his release. As a result of that report, petitioner's parole was revoked, and he was returned to prison.

Shortly after his return to prison, the Board conducted a hearing to consider whether to rerelease petitioner immediately or to keep him in prison and set a new release date some time in the future. After the hearing, the Board issued an order denying rerelease and setting a new release date approximately 23 years in the future.

Petitioner requested administrative review, arguing, among other things, that the Board's decision was contrary to statute and to various provisions of the United States Constitution. The Board denied that its actions violated any

statute or constitutional provision, and noted that the statutes and rules in effect at the time when petitioner committed his crimes expressly authorized the Board to deny rerelease.

Petitioner filed a petition for judicial review of the Board's order in the Court of Appeals. The state moved to dismiss the petition, arguing that the order was immune from judicial review under ORS 144.335(3). That statute provides, in relevant part:

"(1)   When a person over whom the [B]oard exercises its jurisdiction is adversely affected or aggrieved by a final order of the [B]oard related to the granting, revoking or discharging of parole, the revoking of post-prison supervision or the imposition of conditions of parole or of post-prison supervision and after exhaustion of administrative review as provided by [B]oard rule, such person is entitled to judicial review of the final order.

"* * * * *

"(3)   Notwithstanding subsection (1) of this section, *the [B]oard's order is final and is not subject to judicial review when the [B]oard makes any decision relating to a release date* or a parole consideration hearing date, including:

"(a)   Setting an initial release date under ORS 144.120, except that the setting of an initial release date under ORS 144.120 remains subject to judicial review if the prisoner contests the crime severity rating, the history risk score or aggravation factors found by the [B]oard under the rules of the [B]oard.

"(b)   Setting a date for a parole consideration hearing under ORS 144.228.

"(c)   Setting a release date, or declining to set a release date, after a parole consideration hearing, under ORS 144.228.

"(d)   Denying, granting or granting in part a prisoner's request under ORS 144.122 for advancement of the initial release date.

"(e)   Referring a prisoner for psychological evaluation under ORS 144.223.

"(f)   Postponing a prisoner's release date because of serious misconduct during confinement under ORS 144.125(2).

"(g)   Postponing a prisoner's release date because of a psychological diagnosis under ORS 144.125(3).

"(h)   Postponing a prisoner's release date because of a prisoner's refusal to submit to a psychological evaluation.

"(i)   Denying a prisoner's request under ORS 144.228(1) for an early parole consideration hearing."

The Court of Appeals agreed with the state that the order was not reviewable and dismissed the petition. In its order of dismissal, the court cited its own intervening decision in *Luckey v. Board of Parole*, 150 Or App 480, 946 P2d 361 (1997). In *Luckey*, the Court of Appeals had held that ORS 144.335(3) unambiguously expresses a legislative intent that any "decision relating to a release date" be immune from review. *Id.* at 483.

Petitioner argues in this court that, although the order at issue indisputably is a "decision relating to a release date," it nevertheless falls *outside* the purview of ORS 144.335(3), because it is not one of the nine specific *types* of orders that paragraphs (3)(a) through (i) of that statute describe expressly. He contends, in other words, that ORS 144.335(3) does not preclude review of *all* decisions relating to release dates but, instead, only of the nine specific types of decisions relating to release dates specifically enumerated therein.

■      Because petitioner raises a question of statutory construction, we proceed under the analytical framework set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). We begin by examining the text and context of ORS 144.335(3). If the meaning of the statute is clear at that level, then our inquiry ends there. *Id.* at 610-11.

■■     By its express terms, the statute precludes review of "*any* decision relating to a release date." Read out of context, those words would negate any contention that the legislature had something less than the entire class of decisions of that kind in mind. Petitioner does not deny that that wording appears to comprehend all release date decisions. He relies,

instead, on the words that follow that phrase. In his view, the statutory list of orders that begins with the word "including" plausibly may be read as undercutting the wording that precedes it, *i.e.*, it may be read to mean that *only* the *specifically* enumerated orders are unreviewable.

■      Petitioner acknowledges that the most immediately available explanation of the latter portion of the statute is that it provides examples of the variety of orders that are included in the preceding phrase, but argues that that explanation is problematic, because the preceding wording is self-explanatory and because the enumerated orders do not in any way explain or expand upon that wording. Ultimately, petitioner argues, reading the enumerated orders as mere examples adds nothing to the statute: It relegates a whole section of the statute to a state of mere surplusage, a result that is inappropriate, given this court's stated goal of giving effect to every provision of a statute. *See, e.g., State v. K. P.*, 324 Or 1, 8, 921 P2d 380 (1996) (whenever possible, court will construe statute in manner that gives effect to every provision).

Petitioner argues further that, if the list of orders that follows the word "including" is construed to be a specific enumeration of the types of orders for which judicial review is precluded, then the foregoing problem is avoided. Such a reading is possible, petitioner contends, because, in some instances, the term "including" can be used as a term of limitation. In fact, petitioner argues, one can infer that the legislature intended the word as a term of limitation in ORS 144.335 from the fact that the statute does not include any wording that would counter such an inference (such as "including, but not limited to"), as the statute ordinarily would be expected to do, if it were enumerating examples of a broader term.

As noted, petitioner acknowledges that there is a plausible, possibly more likely, explanation of that latter part of the statute, *viz.*, that the list merely sets out examples of the variety of orders that are included in the phrase that precedes it. But petitioner suggests that, because his competing theory also is at least *plausible*, an ambiguity exists at this first level of analysis that must be resolved by proceeding to

the second level of analysis—legislative history. *See Martin v. City of Albany*, 320 Or 175, 182, 880 P2d 926 (1994) (where most likely reading of text is not only *plausible* reading, court proceeds to second level of analysis); *Weidner v. OSP*, 319 Or 295, 301, 877 P2d 62 (1994) (even where one reading of statute is more likely at first level of analysis, court will proceed to second level if another reading is possible).

We do not agree that petitioner's proposed interpretation is plausible. Reading the latter part of ORS 144.335(3) as an *exclusive* list of orders that are made unreviewable by the statute is directly contrary to the wording that precedes it, *viz.*, the statement that "*any* decision relating to a release date" is not subject to judicial review. When a reasonable and natural reading of that part of the statute is available that is wholly consonant with the use of the word "any," we cannot hold that a reading that ignores that term is "plausible."

■ Petitioner suggests that we must accept his interpretation as plausible, because it is the lesser of two evils. In that regard, he contends that it is better to read a single word out of the statute than to relegate fully 80 percent of it to the status of mere surplusage. We find that argument unpersuasive both on a theoretical level and as it applies to this particular statute. As to theory, our response is simple: We do not make decisions about the meaning of a statute by comparing the *numbers* of words that are affected by the competing interpretations. Furthermore, even if petitioner's argument had some value as a general proposition, it has no relevance to the statute at issue. Reading the latter part of ORS 144.335(3) as a list of illustrative examples does not turn that list into "mere surplusage." Even if the concept of a "decision relating to a release date" is relatively clear, and further description of the kinds of orders included in the concept is not *necessary*, the legislature reasonably could believe that an illustrative list would be *helpful* and include it on that basis.

Finally, petitioner contends that the plausibility of his argument is illustrated by the fact that the state took an allegedly inconsistent position about the availability of review under ORS 144.335(3) in *Quintero v. Hill* (CV98-0824), a related habeas corpus case. Petitioner has moved

this court to take judicial notice of various facts and submissions in that case, in the apparent belief that an understanding of the state's arguments in that proceeding might be helpful to this court in its resolution of the present controversy. We disagree. It is for this court, not the Board's legal representatives, to determine what the legislature intended when it enacted ORS 144.335(3). *See Lincoln Loan Co. v. City of Portland*, 317 Or 192, 199, 855 P2d 151 (1993) (determination of meaning of statute is one of law for the court). In view of that fundamental rule, the fact that the state has taken a certain position elsewhere about the meaning of the statute that is not consonant with the state's position here is not pertinent and, even if it were pertinent, not persuasive.

We conclude that the meaning of ORS 144.335(3) is clear from text and context, and that petitioner's arguments provide no occasion for delving into legislative history or other levels of analysis. *See PGE*, 317 Or at 611 (when legislature's intent is clear from text and context, further inquiry is unnecessary). On its face, the statute provides that "*any* decision relating to a release date" is not subject to judicial review.

Petitioner petitioned for judicial review of a decision that, by his own concession, relates to a release date. Because such decisions are not subject to review under ORS 144.335(3), the Court of Appeals correctly dismissed the petition.[1]

The order of dismissal of the Court of Appeals is affirmed. The petition for judicial review is dismissed.

---

[1] Petitioner also argued, on the merits, that the Board's order violates Oregon law. Because we conclude that the order is exempt from review, we do not consider those arguments.